UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

MARCELA NICOLE SAUZO VARGAS,
by and through MAYRA VARGAS RUIZ,

                Plaintiff,

     v.

                                   Case No. 18-cv-272

MADISON METROPOLITAN SCHOOL DISTRICT,
JENNIFER CHEATHUM and
COMMUNITY INSURANCE CORPORATION,

                Defendants.

---

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

## INTRODUCTION

Plaintiff Marela Nicole Sauzo Vargas, by her mother, Mayra Vargas Ruiz, brought this lawsuit after she claimed that she was the victim of a sexual assault in April 2015. The alleged perpetrator was a fellow student at Plaintiff's high school.

As a result of the assault, Plaintiff brought two claims against the Madison Metropolitan School District, Superintendent Jennifer Cheathum, and the District's insurance company claiming violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA"), and Title V of Rehabilitation Act, 29 U.S.C. § 794 (the "Rehabilitation Act"). In her Complaint, Plaintiff asserts that Defendants had knowledge that the alleged perpetrator intended to assault and subsequently did assault Plaintiff. Defendants deny any such knowledge.

While an alleged sexual assault is no doubt concerning, Plaintiff has no legal recourse against the named Defendants. To prevail on her claims, Plaintiff must establish that she suffered peer-to-peer disability-based harassment, that the Defendants knew about the harassment, and that the Defendants' response to that harassment was clearly unreasonable. The undisputed facts of this

case demonstrate that the Plaintiff was never the victim of disability-based harassment. This fact is dispositive of the entire case and dictates that the entire case be dismissed. Additionally, Defendants had no knowledge of any disability-based harassment (or, any harassment, for that matter) until after Plaintiff reported the alleged sexual assault. This too is dispositive of Plaintiff's case. Further still, Defendants' response to the alleged sexual assault was thorough and swift. As a matter of law, Defendants' response was not "clearly unreasonable" and, as such, the claims fail. In addition, the lone act of sexual assault, while unfortunate, cannot legally form the basis of an ADA or Rehabilitation Act claim against the Defendants. Finally, Plaintiff cannot assert either an ADA or Rehabilitation Act claim against individual defendants. As such, her claim against Cheathum must be dismissed, even if her other claims are somehow allowed to proceed beyond this motion.

For these reasons, as set forth in more detail below, this Court should grant Defendants' Motion for Summary Judgment and dismiss Plaintiff's claims against the Defendants.

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as Plaintiff has alleged civil actions arising under federal law. [Defendants' Proposed Findings of Fact (herein referred to as "PFOF"), ¶ 55.] Venue is proper in the Western District of Wisconsin, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and alleged acts and omissions giving rise to the claim occurred in the district, as Plaintiff claims she was injured by events or omissions that took place in Madison, Wisconsin. [PFOF ¶ 56.]

## FACTS

### A. General Background

Plaintiff Marcela Nicole Sauzo Vargas ("Plaintiff") is a cognitively and mentally disabled adult who currently resides with her mother, Mayra Lizeth Vargas Ruiz. [PFOF ¶ 2.] Plaintiff formerly attended James Madison Memorial High School ("Memorial"), a local high school within the Madison Metropolitan School District (the "District"). [PFOF ¶ 6.] She attended school at Memorial from September 2012 through November 2015. [PFOF ¶ 6.] Plaintiff was a special education student who worked with Memorial special education teacher Jessika Schultz ("Schultz") and District social worker Rosemary Barrientos-Irigoyen ("Barrientos"). [PFOF ¶¶ 7, 12, 13, 15, 17.]

Student X[1] was another student who attended Memorial. [PFOF ¶ 41.] He was a transfer student who was approved to enroll and begin attending classes on March 5, 2015.[2] [PFOF ¶¶ 41, 42.] Like Plaintiff, Student X also had cognitive disabilities. [PFOF ¶ 43.]

### B. The Alleged Sexual Assault and Police Investigation

On April 20, 2015, Plaintiff reported to a teacher that she had some form of sexual contact with another student from Memorial. [PFOF ¶ 24.] Plaintiff could not initially identify the other student. [PFOF ¶ 25.] However, Memorial staff were able to identify the student after reviewing surveillance footage where Plaintiff and Student X walked down to the stairwell and disappeared from view for approximately six to seven minutes. [PFOF ¶¶ 25, 26.] Upon receiving the allegation, Memorial staff contacted the Madison Police Department ("MPD"). [PFOF ¶ 28.] MPD conducted an investigation of the alleged sexual assault. [PFOF ¶ 28.]

---

[1] For the privacy of the student and pursuant to Wis. Stat. 118.125, hereinafter referred to as "Student X."
[2] Pursuant to Article X, Section 3 of the Wisconsin Constitution, as well as Wis. Stat. § 121.77, the District was obligated to admit Student X because he resided in the Memorial attendance area of the District.

After she disclosed the allegation to a teacher, Plaintiff spoke with Barrientos and Schultz. [PFOF ¶ 29.] When Plaintiff disclosed what had happened, her story about the incident evolved. [PFOF ¶¶ 30.] Although Plaintiff used the word "sex" to describe what had happened with the other student, Schultz was uncertain whether Plaintiff knew what that word actually meant. [PFOF ¶ 31.] After Schultz and Barrientos spoke with Plaintiff, they, along with then-Assistant Principal Pete Hartman, called Plaintiff's mother. [PFOF ¶ 32.]

### C. Memorial's Internal Investigation

Assistant Principal Hartman began an internal investigation at Memorial after he learned of the alleged sexual assault. [PFOF ¶ 49.] The internal investigation included reviewing video of Memorial surveillance cameras and speaking with staff members about the allegation. [PFOF ¶ 50.] After the internal investigation, Assistant Principal Hartman was not able to come to any definitive conclusion about what occurred on April 20, 2015. [PFOF ¶ 51.]

### D. Student X's History

Assistant Principal Hartman did not discover information about Student X's prior history until after April 20, 2015. [PFOF ¶ 45, 46.] The Memorial Assistant Principal was not aware of the District being in possession of any detailed information about Student X prior to April 20, 2015. [PFOF ¶ 48.]

## SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56, summary judgment should be granted when there are no genuine disputes of material facts and the moving party is entitled to judgment as a matter of law. A factual dispute is "material" if the dispute could potentially affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). Factual disputes over irrelevant or non-dispositive issues will not preclude an otherwise proper motion for summary

judgment. *Id*. (citation omitted). A factual dispute is "genuine" if the evidence presented by the party opposing summary judgment is such that a reasonable jury could return a verdict for the non-moving party. *Id*. A genuine factual dispute cannot rest on conclusory allegations or denials; instead, it must be supported by admissible evidence that sufficiently demonstrates a triable issue. *Id*. at 248-49 (citations omitted).

Summary judgment should be granted "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). In those situations, there is no issue as to any material facts, because "a complete failure of proof concerning an element essential of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 322-23. Stated more colloquially, "summary judgment 'is the "put up or shut up" moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir. 2003) (quoting *Schacht v. Wisconsin Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)).

## ARGUMENT

The evidence in this case demonstrates that this case is ripe for summary judgment, as Plaintiff has failed to present sufficient evidence to try her two discrimination claims to a jury. Specifically, Plaintiff has failed to proffer any evidence that (1) the Plaintiff was harassed because of her disability, (2) that the District had actual knowledge that Plaintiff was harassed because of her disability, or (3) that the District was deliberately indifferent to the alleged harassment. The lack of evidence on even just one of these three items is fatal to Plaintiff's claims. Likewise, Plaintiff's two claims fail as a matter of law because the lone alleged act of sexual harassment is

insufficient as a matter of law to form the basis of her claims. Finally, even assuming that the claims against the District are allowed to proceed beyond summary judgment, the claims against Superintendent Jennifer Cheathum must be dismissed as a matter of law. For these reasons, Defendants' motion should be granted and Plaintiff's claims should be dismissed entirely with prejudice.

## I. Plaintiff Cannot Establish the Required Elements of "Peer-to-Peer" ADA and Rehabilitation Act claims.

Plaintiff has asserted two discrimination claims against the Defendants: a claim under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA") and a claim under Title V of Rehabilitation Act, 29 U.S.C. § 794 ("Rehabilitation Act"). The ADA and Rehabilitation Act claims are analyzed under the same standards. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004) (citing *Ozlowski v. Henderson*, 237 F.3d 837, 842 (7th Cir. 2001)). The only distinguishing factor is that claims under the Rehabilitation Act require that the defendant receive federal funds. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012).

Section 504 of the Rehabilitation Act and Title II of the ADA "were designed to protect disabled persons from discrimination in the provision of public services." *Werth v. Bd. of Dirs. Of Pub. Schs.*, 472 F. Supp. 2d 113, 1126-27 (E.D. Wis. 2007). Specifically, Section 504 of the Rehabilitation Act "makes it unlawful for a federal grant recipient to discriminate against an otherwise qualified handicap individual." *Byrne v. Bd of Educ., Sch. Dist. of W. Allis-West Milwaukee*, 979 F.3d 560, 563 (7th Cir. 1992) (citations omitted). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." *Wis. Cmty. Servs. v. City of Milwaukee*, 465 F.3d 737, 750 (7th Cir. 2006) (quoting 42 U.S.C. § 12132).

6

In limited circumstances, a school district or other agency may be liable for "peer-to-peer disability-based harassment" under the ADA or the Rehabilitation Act. While a school district will not be held liable for the actions of students harassing other students, it may be held liable for its own response to the acts of those harassing students in certain circumstances. *Werth,* 472 F. Supp. 2d at 1126-27 (citing *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 641-42, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999)). In order to establish a peer-to-peer disability-based harassment claim against a school district, a plaintiff must prove that the plaintiff (1) had a disability,[3] (2) was harassed "based on that disability", (3) that "the harassment was sufficiently severe or pervasive that it altered the condition of [their] …education and created an abusive educational environment," (4) that the defendant school district knew about the harassment, and (5) the defendant school district was deliberately indifferent to the harassment. *Bowe v. Eau Claire Area Sch. Dist.*, 2017 WL 1458822, at *2 (W.D. Wis. 2017) (citing *Werth*, 472 F. Supp. 2d at 1126-27); *see also Martin v. E. St. Louis Sch. Dist. # 189*, 2016 WL 1718332, at *5 (S.D. Ill. 2016).[4] Failure to establish one or more of the required elements is fatal to a claim. *See, e.g.*, *Werth*, 472 F. Supp. 2d. at 1128.

Plaintiff has asserted peer-to-peer harassment claims under both the ADA and Rehabilitation Act against the District, Superintendent, and their insurer grounded in an alleged sexual assault committed by another student in the District. Although Plaintiff's mother claims she advised the District that a boy wanted to have sex with her daughter prior to the alleged assault, which District employees deny, this factual dispute is wholly immaterial because the vague complaint – even if actually made – is still legally insufficient to provide actual knowledge

---

[3] Defendants concede that Plaintiff is disabled. [PFOF ¶ 2.]
[4] Additionally, a plaintiff must demonstrate that a defendant received federal funds in order to maintain a Rehabilitation Act claim. *Jaros*, 684 F.3d at 671. Defendants concede that the District receives federal funding. [PFOF ¶ 3.]

sufficient to establish a claim. Further, there is no evidence Plaintiff was ever harassed because of her disability and there is no evidence the District was deliberately indifferent to any alleged harassment. Finally, Plaintiff cannot base her claims upon a single instance of harassment. As such, Plaintiff's claims must be dismissed.

### a. Plaintiff cannot establish that she was harassed because of her disability.

Plaintiff's peer-to-peer disability-based harassment claims both suffer from the same fundamental flaw: the record is completely devoid of any evidence that Plaintiff was harassed at any time because of her disability.[5] Without this evidence, Plaintiff's claims under both the ADA and the Rehabilitation Act fail as a matter of law and must be dismissed.

Allegations of harassment are insufficient to meet this element of the ADA and Rehabilitation Act claims unless the plaintiff can demonstrate that he or she was harassed **because of** her disability. *Bowe,* 2017 WL 1458822, at *2. A plaintiff can satisfy this element by establishing a link between the harassment and the harasser's knowledge of the disability or "resentment for" the plaintiff's accommodations. *Id.* (citing *Carlson v. Carroll Univ.*, No. 09-cv-551, 2011 WL 5921445, at *17 (E.D. Wis. 2011)). Failure to demonstrate a link between the allegedly harassing conduct and the harasser's knowledge of the plaintiff's disability is fatal to a plaintiff's claim. *See Carlson*, 2011 WL 5921445, at *17; *Werth*, 472 F. Supp. 2d. at 1128.

In this case, there is absolutely no evidence the student who allegedly harassed Plaintiff, Student X, had any knowledge that Plaintiff was disabled, let alone that he engaged in the alleged actions because of Plaintiff's disability. Without any evidence that the alleged harasser took actions because of Plaintiff's disability, the claim must fail and it must be dismissed. *See Werth*,

---

[5] Notably, Plaintiff's Complaint does not even allege that she was harassed because of her disability, nor does she allege that Student X knew of her disability. [*See* Dkt. 1.] As such, her claims could be dismissed under Rule 12(b)(6). *See Bowe*, 2017 WL 1458822, at *2.

472 F.Supp.2d at 1128-29 (dismissing claim because plaintiff "present[ed] insufficient proof that he was harassed because of his disability.").

>    **b.  The District lacked actual knowledge that Plaintiff was allegedly harassed because of her disability.**

Even assuming Plaintiff can proffer evidence that she was harassed by Student X because of her disability, there is no evidence the District had actual knowledge that Plaintiff was harassed by a specific student because of her disability. As such, Plaintiff's claims suffer another fatal flaw. Without proof of this essential element, Plaintiff's claims must also be dismissed.

As part of her peer-to-peer harassment ADA and Rehabilitation Act claims, Plaintiff is required to demonstrate that the District had knowledge of the disability-based harassment. *Bowe*, 2017 WL 1458822, at *2. "Knowledge" of the harassment must be actual, rather than constructive knowledge. *Doe v. Galster*, 768 F.3d 611, 617-18 (7th Cir. 2014)[6] ("The standard set out in *Davis* is not satisfied by knowledge that something might be happening and could be uncovered by further investigation. The standard is 'actual knowledge.'" (citing *Davis*, 526 U.S. 629).) To prove actual knowledge, Plaintiff needs to prove that the District not only had knowledge of the harassment, but also knowledge that Plaintiff was being harassed ***because of*** her disability. *Rost ex rel. K.C. v. Steamboat Springs RE-2 School Dist.,* 511 F.3d 1114, 1120 (10th Cir. 2008) (noting the school's lack of knowledge of the specific type of harassment); *Moore v. Chilton County Bd. of Educ.*, 1 F.Supp.3d 1281, 1303 (M.D. Ala. 2014) (same); *Martin v. East St. Louis School District #189,* 2016 WL 1718332, at *5 (S.D. Ill. 2016) ("More fundamentally, there's nothing to suggest

---

[6] Although this case dealt with a Title IX claim, it relies upon the same precedent from *Davis* that *Werth* and other cases regarding peer-to-peer ADA and Rehabilitation Act claims rely upon to establish claims. *Doe*, 768 F.3d at 617; *Werth*, 472 F.Supp.2d at 1126-27. Additional cases cited herein premised on Title IX or similar peer-to-peer harassment claims have also been cited in support of Defendants' Brief, as they also rely upon the rationale and holding of *Davis*. *See Martin v. East St. Louis School District #189,* 2016 WL 1718332, at *5 (S.D. Ill. 2016) ("The statutory language in Title IX used to support student-on-student sexual harassment claims is quite similar to the companion language in the Rehabilitation Act and the Americans with Disabilities Act, meaning that a variant of the *Davis* test should apply to student-on-student disability harassment claims." (citations omitted))

that the school had any knowledge that C.D.C. was being harassed based on her disability…"). Further, the Plaintiff must also demonstrate that the District had actual knowledge of the identity of the other student who was engaging in the disability-based harassment. *See Karasek v. Regents of University of California*, 2018 WL 1763289, at *8 (N.D. Cal. 2018) ("The parties dispute when UC learned the **identity** of Butler's assailant, **which is relevant to establishing UC's actual knowledge of the harassment.**" (emphasis added)).

Plaintiff's claims are premised on two allegations of harassment: (1) that Student X allegedly told Plaintiff that he wanted to have sexual relations with her and (2) the subsequent alleged sexual assault of Plaintiff by Student X. However, neither of these theories demonstrate that the District had actual knowledge of a **specific student** engaging in **disability-based** peer-to-peer harassment, which are necessary elements to impose liability on the District.

i. Plaintiff's mother's testimony is legally insufficient evidence to establish that Student X verbally harassed Plaintiff prior to April 20, 2015.

Plaintiff claims she was harassed by Student X when he reportedly told her that he wanted to have sexual relations with her. The only evidence of this alleged harassment is Plaintiff's mother's testimony of what Plaintiff's mother claims Plaintiff told her. [PFOF ¶ 34.][7] Plaintiff's mother's allegations are hearsay and inadmissible to prove that Student X actually made any such statements to Plaintiff. *See Gabrielle M. v. Park Forest-Chicago Heights, IL. School Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003) ("Moreover, her father's testimony that Gabrielle had told him that Jason touched her inappropriately is also insufficient evidence to support her claim. First, it is hearsay and cannot be admitted to prove the truth of the matter asserted—that Jason touched Gabrielle."); *see also* Fed. R. Evid. 801(c)(2) and *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir.

---

[7] Plaintiff is not competent to testify, and will not be testifying in this case.  Plaintiff's only apparent witness other than District employees is her mother.

2009) ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment."). Other than inadmissible hearsay, Plaintiff has provided no evidence that Student X made any such statements to Plaintiff. Therefore, any claims based upon Student X's comments to Plaintiff prior to April 20, 2015, must be dismissed based upon a complete lack of admissible evidence.

> ii. <u>Plaintiff's mother's alleged complaint to two Memorial employees did not give the District actual knowledge of disability-based peer-to-peer harassment.</u>

Even assuming the Court overlooks Plaintiff's inability to prove that Student X made any sort of harassing statements to Plaintiff, Plaintiff still cannot establish that the District had actual knowledge of disability-based peer-to-peer harassment grounded on Student X's statements.

Plaintiff's mother's entire theory of actual knowledge of harassment relies upon her allegation that she told two Memorial employees that an unidentified student reportedly wanted to have sexual relations with Plaintiff and that the District failed to take preventative action. [PFOF ¶ 34.] Construing the facts in favor of the non-moving party and assuming *arguendo* that Plaintiff's mother did report to Memorial employees[8] that a boy wanted to have sexual relations with Plaintiff, Plaintiff's mother's vague report to the District is legally insufficient to constitute actual knowledge by the District.

First, Plaintiff's mother's alleged report did not provide the District with actual knowledge that Plaintiff was being harassed because of her disability. Plaintiff's mother simply claims to have reported to two District employees that another student expressed a sexual desire towards Plaintiff. [PFOF ¶ 34.] Plaintiff's mother never advised the District or any employees that Plaintiff was

---

[8] Both Memorial employees deny ever speaking to Plaintiff's mother on this topic. [PFOF ¶¶ 38, 39.] However, this disputed fact is not material and, as such, is not fatal for a dispositive motion. Plaintiff cannot establish a number of required elements of her claims unrelated to this factual dispute. [*See* Sections I(a), I(b)(i), I(b)(iii), I(c), I(d).] As such, the factual dispute on this issue is irrelevant. *Celotex Corp.*, 477 U.S. at 322-23.

being harassed based on her disability, nor did she provide any information to the District or its employees that could even constitute constructive notice of disability-based harassment. Therefore, any knowledge that the two Memorial employees may have had from this vague statement did not include any knowledge that the harassment was motivated by Plaintiff's disability. Second, Plaintiff's mother's report did not provide the identity of the alleged harasser. [PFOF ¶ 34.] Rather, she provided a vague reference to "a boy." [PFOF ¶ 34, 35.] Failure to identity the alleged harasser is fatal to demonstrating the District's actual knowledge. *See Karasek*, 2018 WL 1763289, at *8. Further, the District had no obligation to conduct a "needle in a hay stack" investigation of every male student at Memorial to corroborate Plaintiff's mother's allegations to try to discern the identity of the student. *Doe*, 768 F.3d at 617-18. As such, any knowledge that the District may have had would be legally insufficient to establish "actual knowledge" as required under current precedent.

### iii.   The District's knowledge of the alleged assault on April 20, 2015, did not provide actual knowledge of disability-based peer-to-peer harassment.

There is no dispute that the District learned on April 20, 2015, that Plaintiff claimed to have been sexually assaulted by Student X. [PFOF ¶ 24.] However, there is no evidence to suggest the District had actual knowledge that Plaintiff was allegedly assaulted by a Student X because of her disability. Indeed, nearly three and a half years after the alleged incident, Plaintiff still has not produced any evidence that Student X assaulted Plaintiff because of her disability. While the District acquired actual knowledge of the alleged assault after it occurred, there is no evidence the District had knowledge that the harassment was disability-based. *See Martin,* 2016 WL 1718332, at *5. Therefore, the knowledge the District acquired regarding the incident on April 20, 2015, or during the subsequent investigation is insufficient to establish actual knowledge of ***disability-based*** peer-to-peer harassment.

The vague allegations of another student's desires to have sexual relations with Plaintiff supposedly presented by Plaintiff's mother and the April 20, 2015, alleged sexual assault simply do not rise to the level of actual knowledge required to impose liability on the District for peer-to-peer disability-based harassment. The alleged pre-assault reports by Plaintiff's mother did not advise the District of disability-based harassment or of the identity of the harassing student, and the information the District discovered after the alleged assault on April 20, 2015, did not reveal that Plaintiff was harassed because of her disability. As such, Plaintiff cannot meet this element of her claims.

### c.   *A single instance of alleged harassment is not sufficient to meet the third element of the Discrimination Claims.*

In addition to failing to demonstrate that Plaintiff was harassed by Student X because of her disability and failing to demonstrate that the District had actual knowledge of any disability-based peer-to-peer harassment, Plaintiff's claims also fail because any alleged harassment did not have the "systemic effect" of denying Plaintiff access to her education.

To meet the third element of the ADA and Rehabilitation Act claims, the harassment must be "severe or pervasive" and must have a "***systemic*** effect of denying the victim equal access to an educational program or activity…" *Werth,* 472 F. Supp. 2d at 1129 (emphasis in original; citing *Davis*, 526 U.S. at 652-53). A "systemic effect" requires a "'concrete, negative effect' on the victim's education" such as "dropping grades…becoming housebound or hospitalized due to harassment…or physical violence." *Gabrielle M.*, 315 F.3d at 823 (internal citations omitted). Examples of harassment that rises to the necessary level of "severe" or "pervasive" includes where "male students physically threaten female students every day and prevent them from using an athletic field of computer lab." *Werth*, 472 F. Supp. 2d at 1127 (citation omitted).

i. Student X's alleged verbal harassment prior to April 20, 2015, does not constitute severe and pervasive harassment that systemically deprived Plaintiff of her education.

As noted above, Plaintiff has not offered any admissible evidence to demonstrate that Student X verbally harassed, or engaged in any alleged harassment of, Plaintiff prior to April 20, 2015. [*See* Section I(a)(i), *supra*.] As such, this allegation cannot form the basis of her claim and she cannot argue that that the verbal harassment systemically denied her access to her education.

Assuming, *arguendo*, that Plaintiff can establish that Student X made any such harassing comments to her prior to April 20, 2015 (and that Plaintiff can establish the other requisite elements), these comments do not rise to the level of harassment that is "severe" and "pervasive" such that they had a "systemic effect of denying" Plaintiff access to her education. *See Werth*, 472 F.Supp.2d at 1129 (emphasis omitted).

First, comments and remarks made by young adults may not be legally sufficient to establish a "severe" and "pervasive" form of harassment. As the United States Supreme Court noted in *Davis*, "children may regularly interact in a manner that would be unacceptable among adults…often engag[ing] in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it…" but that such conduct does not rise to the level of constitutional or federal law violations. *Davis*, 526 U.S. at 651-52. Arguably, a teenager expressing a sexual desire towards another teenager falls within the scope of behaviors that adults may frown upon, but such comments do not themselves demonstrate "severe" harassment. *See, e.g.*, *Doe*, 768 F.3d at 618.

Second, the record is devoid of any evidence that Student X's alleged comments had any "concrete, negative effect" on Plaintiff's education. Plaintiff does not offer evidence that she failed to attend classes or was otherwise unable to attend classes as a result of Student X's comments.

*See Gabrielle M.*, 315 F.3d at 823. Without evidence that Student X's actions somehow had the effect of precluding Plaintiff from accessing the educational benefits that she was entitled to from the District, she cannot establish her claim. *See Werth*, 472 F.Supp.2d at 1128-29.[9]

> ii. The alleged sexual assault on April 20, 2015, did not have the "systemic effect of denying" Plaintiff of her education.

While Defendants do not dispute that an allegation of sexual assault could constitute severe and pervasive harassment, the single instance of harassment is legally insufficient to have a "*systemic* effect of denying" Plaintiff access to her education. *Werth*, 472 F.Supp.2d at 1129 (emphasis in original). As such, the single instance of harassment cannot form the basis of her peer-to-peer claim.

Case law is unequivocal that a "single instance of severe peer-on-peer harassment is not enough" to sustain a peer-to-peer claim. *Id.* at 1129. Specifically, the district court in *Werth* adopted the U.S. Supreme Court's ruling from *Davis* regarding the need for repeated instances of harassment to sustain a claim:

> Although, in theory, a single instance of sufficiently severe one-on-one peer harassment could be said to have such an effect, we think it unlikely that Congress would have thought such behavior sufficient to rise to this level in light of the inevitably of student misconduct and the amount of litigations that would be invited by entertaining claims of official indifference to a single instance of one-on-on peer harassment.

*Werth*, 472 F. Supp. 2d at 1129 (quoting *Davis*, 526 U.S. at 652-53); *see also Gabrielle M.*, 315 F.3d at 822-23 (citing *Davis*, 526 U.S. at 652-53).

Plaintiff does not allege that she had sexual contact with Student X on any day other than April 20, 2015. [PFOF ¶ 40.] As such, there is only a single instance of alleged harassment. Based

---

[9] "In addition, there is no indication that Robert S. did anything that prevented Werth from working on his wood project or otherwise complete Kruzel's class. Thus, Werth has not established that he was denied the benefits of a federally funded program or activity due to his disability as required to prove the second element of his claim."

on the plain language reading of *Davis* and the subsequent cases implementing its holding, Plaintiff cannot maintain a peer-to-peer disability-based claim premised solely on the alleged sexual assault of April 20, 2015. As such, her claim fails as a matter of law.

> **d.  The School District was not deliberately indifferent to the other student's alleged actions.**

Finally, in addition to the numerous other claim deficiencies noted throughout this brief, Plaintiff cannot succeed on her ADA and Rehabilitation Act claims because she cannot establish that the District was deliberately indifferent. In order to demonstrate the District was deliberately indifferent, Plaintiff must prove that the District's responses to the alleged harassment was "clearly unreasonable." While Plaintiff may argue that the District could have or should have done more, that is irrelevant when assessing deliberate indifference. The facts of the case are clear that the District took appropriate actions in response to the alleged harassment that it had knowledge of. As such, the District was not deliberately indifferent and Plaintiff cannot establish this necessary element of her peer-to-peer disability-based harassment claims.

The final element of her ADA and Rehabilitation Act claims requires Plaintiff to demonstrate that the District was deliberately indifferent to Student X's actions. *See Bowe v. Eau Claire Area School District* ("*Bowe* II"), 2018 WL 791416, at *3 (W.D. Wis. 2018). A court can decide as a matter of law whether a school district was deliberately indifferent to the known harassment. *Gabrielle M.*, 315 F.3d at 824 (citation omitted). A defendant is deliberately indifferent when the "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Bowe* II, 2018 WL 791416at *3. (quoting *Davis* 526 U.S. at 648). This standard "is not a mere reasonableness standard, nor does it require [schools] to remedy peer harassment." *Id*. at *7-8 (quoting *Gabrielle M.*, 315 F.3d at 824). A "clearly unreasonable" standard "sets a high bar for plaintiffs because school administrators must continue to enjoy the

flexibility they require in disciplinary decisions." *Id*. at *8 (internal quotations omitted; quoting *Doe*, 768 F.3d at 619). Further, the high standard prevents courts from "second-guessing the disciplinary decisions made by school administrators." *Gabrielle M.*, 315 F.3d at 825 (citation omitted).

           i.   <u>The District was not required to investigate Plaintiff's mother's allegations or prevent peer-to-peer harassment prior to April 20, 2015.</u>

Again, Plaintiff has not offered any admissible evidence to demonstrate that Student X verbally harassed or engaged in any alleged harassment of Plaintiff prior to April 20, 2015. [*See* Section I(a)(i), *supra*.] Without evidence of this harassment, the District had no duty to respond. *Gabrielle M.*, 315 F.3d at 823-24. Assuming, however, that Plaintiff can even establish that Student X made comments to her prior to April 20, 2015, the District's response to this information (as alleged by Plaintiff's mother)[10] was entirely appropriate and not clearly unreasonable.

Plaintiff's mother alleges that after she informed the District that an unidentified boy wanted to have sexual relations with Plaintiff, she was told by a school social worker that the District would keep an eye on Plaintiff. [PFOF ¶ 37.] The District was already closely monitoring Plaintiff at the time because, for at least one and one-half years prior to the alleged assault, Plaintiff had regularly discussed wanting a boyfriend, wanting to kiss boys, and wanting a baby. [PFOF ¶¶ 18, 19, 20, 21, 22.] Continued monitoring of Plaintiff in light of her mother's vague complaint about an unidentifiable student would be entirely appropriate. *See Gabrielle M.*, 315 F.3d at 825. To argue otherwise would have required the District to undergo an extensive witch-hunt, the sole narrowing criteria being that the harassing student was a boy wearing certain attire,[11] and detract

---

[10] Defendants dispute that District employees made any such remark to Plaintiff's mother. [PFOF ¶¶ 38, 39.] However, the dispute is immaterial because, even assuming the facts in a light most favorable to Plaintiff, Defendants' alleged response to the complaint was entirely reasonable. Therefore, Plaintiff's claim still fails.

[11] The Court can take judicial notice that the population of Memorial in 2017 was over 1,900 students. *See* "About Us – School Profile," https://jmm.madison.k12.wi.us/about (last accessed Jan. 30, 2019).

from more pressing or imminent concerns. *Id.* ("…the school may take into consideration administrative burdens or the disruption of other students' or their teachers' schedules in determining an appropriate response."). In light of the circumstances and the vagueness of the alleged report, the District's response was entirely appropriate.

> ii.  The District was not deliberately indifferent to the alleged sexual assault on April 20, 2015.

After Plaintiff alleged that Student X sexually assaulted her on April 20, 2015, the District took reasonable actions to investigate the claims, assist with the police investigation, and protect Plaintiff and the rest of the student body population. After learning of the allegations, District staff immediately contacted local police to alert them of a possible sexual assault. [PFOF ¶ 28.] Plaintiff's caseworker and a District social worker spoke with Plaintiff to try to determine what happened and immediately contacted Plaintiff's mother. [PFOF ¶ 29.] District employees spoke with police officers and provided information that they had on hand. [PFOF ¶ 44.] An Assistant Principal at Memorial began an internal investigation of the incident, including speaking with potentially knowledgeable staff members and reviewing security footage. [PFOF ¶ 49, 50.] The Assistant Principal also attempted to contact Student X's prior school to obtain additional information about him to provide to the police. [PFOF ¶ 45, 46, 47.] Upon learning more information about Student X, the Assistant Principal relayed certain information to the police. [PFOF ¶46.]

In addition to facilitating a criminal and internal investigation, the District also took steps to protect Plaintiff and monitor Student X. A meeting was held immediately to discuss Plaintiff's protection. [PFOF ¶ 52.] A system was put into place to monitor Plaintiff by having a staff member present with her during the entire school day. [PFOF ¶ 53.] Additionally, the District implemented

a plan whereby Student X would also be constantly monitored by another staff member during his entire school day. [PFOF ¶ 54.]

The District's response to this situation was thorough and multi-faceted. Not only did the District immediately respond to the allegations, it coordinated an internal investigation and assisted with an external investigation. It also immediately implemented supervision for Plaintiff and Student X. This ensured that Plaintiff was protected from an alleged perpetrator as well as ensured the safety of other students. Based on these undisputed facts, this Court can definitively conclude that the District's response was not "clearly unreasonable." *See, e.g.*, *Bowe* II, 2018 WL 791416 at *3-4 (school's response was not clearly unreasonable when it investigated each complaint and "addressed confirmed acts" with "some sort of corrective action."); *Werth*, 472 F.Supp.2d at 1130 (suspending offending students was a reasonable response); *Gabrielle M.*, 315 F.3d at 824 (separating offending student, implementing "time outs," and additional supervision was not clearly unreasonable.) Without a "clearly unreasonable" response by the District, Plaintiff's claims fail.

## II. The ADA and Rehabilitation Act Do Not Permit Claims against Defendants in Their Individual Capacity.

In the event the Court does not grant summary judgment to the Defendants, the Court must still dismiss the claims against Defendant Jennifer Cheatham because Plaintiff's claims cannot be brought against her as a matter of law.

The ADA and Rehabilitation Act do not permit claims against defendants in their individual capacity. *See Stanek v. St. Charles Cmty. Unit Sch. Dist. #303*, 783 F.3d 634, 644 (7th Cir. 2015) (citations omitted); *see also Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000) and *Silk v. City of Chicago,* 194 F.3d 788, 797 n. 5, 798 n.7 (7th Cir. 1999). When the entity for which

the individual defendant works for is already named as a defendant, claims against the individual defendant should be dismissed. *See Stanek*, 783 F.3d at 644 (citations omitted).

Defendant Cheatham is the Superintendent for the District. [PFOF ¶ 4.] The District is a named Defendant in this matter. [PFOF ¶ 3.] Because an individual defendant cannot be liable under the ADA or Rehabilitation Act, all claims against Cheatham must be dismissed.

## CONCLUSION

For the reasons provided heretofore, the Court should grant Defendants' Motion for Summary Judgment.

Dated this 1st day of February, 2019.

/s/ Danielle E. Baudhuin
Lori M. Lubinsky, SBN: 1027575
Danielle E. Baudhuin, SBN 1096371
Attorneys for Defendants, Madison Metropolitan Sch. Dist,
    Jennifer Cheatham and Community Insurance Corp.
AXLEY BRYNELSON, LLP
P.O. Box 1767
Madison, WI 53701-1767
Telephone:  (608) 257-5661
Fax:  (608) 257-5444
Email: llubinsky@axley.com
        dbaudhuin@axley.com