IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARCELA NICOLE SAUZO VARGAS,
by and through MAYRA VARGAS RUIZ,

             Plaintiff,

v.

MADISON METROPOLITAN SCHOOL
DISTRICT, *et al.*,

             Defendants.

OPINION AND ORDER

18-cv-272-slc

---

In April 2015, plaintiff Marcela Nicole Sauzo Vargas, a cognitively disabled student at James Madison Memorial High School, was sexually assaulted by another student while at school. Plaintiff, by her mother, Mayra Vargas Ruiz, brings claims for damages against the Madison Metropolitan School District and its insurance company (collectively, "the district") under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA"), and Title V of the Rehabilitation Act, 29 U.S.C. § 794, contending that the district discriminated against her because of her disability when it failed to protect her from the assault.[1] Defendants have moved for summary judgment, asserting that plaintiff lacks evidence to establish key elements of her claims. I agree that plaintiff has failed to adduce facts from which a jury could find that the district discriminated against her because of her disability. Therefore, I am granting defendants' motion.

---

[1] Plaintiff also sued the district superintendent, Jennifer Cheatham. As plaintiff concedes, however, the ADA and Rehabilitation Act do not permit claims against defendants in their individual capacities. *Stanek v. St. Charles Cmty. Unit Sch. Dist. #303*, 783 F.3d 634, 644 (7th Cir. 2015); *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000); *Silk v. City of Chicago*, 194 F.3d 788, 797 n. 5, 798 n.7 (7th Cir. 1999). Accordingly, the claims against Cheatham must be dismissed.

For purposes of deciding the motion for summary judgment, I find the following facts to be material and undisputed, except as otherwise noted.[2]

FACTS

Plaintiff is a cognitively and mentally disabled adult who resides with her mother, Mayra Lizeth Vargas Ruiz ("Vargas"). Plaintiff's ability to understand her world and respond to it are at a level typical for children three to five years old. At the time of the incident at issue in this lawsuit, plaintiff attended James Madison Memorial High School (Memorial), which is within the Madison Metropolitan School District. In 2017, Memorial had a student population of more than 1,900.

Plaintiff attended Memorial from September 2012 through November 2015 pursuant to an Individualized Education Plan ("IEP"). Jessika Schultz, a special education teacher at Memorial, was plaintiff's case manager in 2015. As a case manager, Schultz dealt with the day-to-day issues of her students and usually acted as the liaison between the school and her students' parents. Rosemary Barrientos-Irigoyen is a school social worker at Memorial, who had frequent contact with plaintiff and Vargas for at least one year prior to April 2015.

For at least eighteen months prior to April 20, 2015, plaintiff often told Barrientos and Schultz that she was interested in boys, she wanted to kiss boys, and she wanted to have a baby. Plaintiff's statements concerned Schultz and Barrientos, who shared their concerns with each other, with plaintiff's IEP team, and with Vargas. Based on plaintiff's statements, Schultz and

---

[2] Plaintiff makes a number of factual allegations in her Proposed Findings of Fact and her brief that are either irrelevant or not supported by admissible evidence. I have disregarded these allegations.

Barrientos discussed with members of the IEP team the need to keep an eye on plaintiff in the school setting. Schultz knew that plaintiff's cognitive deficits made her a vulnerable student.

According to Vargas, sometime in early April 2015, plaintiff came home from school and told her that "a boy" at school wanted to have sex with her. Vargas says she called Barrientos the next day and reported what plaintiff had told her. Vargas could not identify the boy, nor did she know his name or his nationality, but she knew that he wore earrings and that he wore a blue t-shirt, jacket, or sweatshirt. According to Vargas, Barrientos told her that the school would pay close attention to plaintiff.

About a week later, says Vargas, she met with Barrientos and Schultz in person at school and told them that plaintiff had again told her that the same student was saying he wanted to have sex with plaintiff.[3] According to Vargas, Barrientos and Schultz said "that they were going to be paying attention to that and looking out after things and more than anything regarding that kid." Barrientos and Schultz, however, both deny having had any conversation with Vargas before April 20, 2015 about a boy wanting to have sex with plaintiff.

On April 20, 2015, plaintiff told one of her teachers that she had had some form of sexual contact with a male student between class periods. Although plaintiff did not know who the boy was, Memorial staff eventually were able to identify him by reviewing recordings from surveillance cameras. I will refer to him as Student X to protect his privacy and pursuant to Wis. Stat. § 118.125. The recordings show Student X, followed by plaintiff, walking down into a stairwell and disappearing from view for about six or seven minutes.

---

[3] As the district points out, Vargas's statements to Memorial staff are inadmissible to show that an unidentified boy actually made such statements to plaintiff, although they would be admissible to show that the district had been told that such statements were made. *Harden v. Marion County Sheriff's Dept.*, 799 F.3d 857, 861(7th Cir. 2015) (evidence used "only to show notice" not hearsay). More on this below.

3

Student X had transferred to Memorial from another district on March 5, 2015. Student X had cognitive disabilities. Student X had a prior history of engaging in inappropriate sexual conduct with another student at his previous school. There is no evidence, however, that anyone at Memorial knew this until Memorial conducted its investigation after the assault.

After reporting the incident to her teacher, plaintiff spoke with Barrientos and Schultz. Plaintiff's story about the incident evolved as she spoke. Although plaintiff used the word "sex" to describe what had happened with the other student, Schultz was uncertain whether plaintiff knew what that word actually meant. Regardless, Memorial staff took her allegation seriously. After speaking with plaintiff, Schultz and Barrientos, along with assistant principal Pete Hartman, called Vargas. In addition, Memorial staff contacted the Madison Police Department, which investigated the alleged sexual assault.

Hartman also conducted his own investigation. He reviewed Memorial's surveillance camera recordings and spoke with staff members about plaintiff's allegation. From his investigation, Hartman was not able to determine conclusively what had happened between Student X and plaintiff in the stairwell on April 20, 2015.

After the incident, plaintiff and Student X both were assigned a full-time staff member to chaperone them at all times during the entire school day.

OPINION

I. **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter

of law." Federal Rule of Civil Procedure 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004).

A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. "As the 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trustees of Indiana University*, 870 F.3d 562, 568 (7th Cir. 2017).


**II. Disability Discrimination under the ADA and RA**

Plaintiff brings claims against the district under Title V of the Rehabilitation Act, 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132. The aim of both statutes is to protect disabled persons from discrimination in the provision of public services. In pursuit of this goal, Title II of the ADA requires that

> No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services . . . of a public entity, or be subjected to discrimination by any such entity.
>
> 42 U.S.C. § 12132 (2003).

5

Similarly, Title V, § 504 of the Rehabilitation Act provides that

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

29 U.S.C. § 794(a).

Rehabilitation Act claims are analyzed under the same standards as those used for ADA claims, with the only distinguishing factor being that claims under the Rehabilitation Act require that the defendant receive federal funds. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012); *Ozlowski v. Henderson*, 237 F.3d 837, 842 (7th Cir. 2001). It is undisputed in this case that the district receives federal funds.

To establish a prima facie case of discrimination under Title II, a plaintiff must show that:

(1) she is a "qualified individual with a disability";

(2) she was denied "the benefits of the services, programs, or activities of a public entity" or otherwise subjected to discrimination by such an entity; and

(3) the denial or discrimination was "by reason of" her disability.

*Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (quoting 42 U.S.C. § 12132).

To recover monetary damages, a plaintiff must prove that the defendants intentionally discriminated against her because of her disability. *Strominger v. Brock*, 592 F. App'x 508, 511 (7th Cir. 2014) ("Even if Strominger could show a violation of the ADA and/or Rehabilitation Act, he could not recover compensatory damages without showing intentional discrimination."); *Barnes v. Gorman*, 536 U.S. 181, 184–89 ("[T]he remedies for violations of § 202 of the ADA and § 504 of the Rehabilitation Act are coextensive with the remedies available in a private cause

of action brought under Title VI of the Civil Rights Act of 1964[.]"); *Meagley v. City of Little Rock*, 639 F.3d 384, 390 (8th Cir. 2011) ("Every circuit court to address the issue since *Barnes* has reaffirmed that intentional discrimination must be shown to recover compensatory damages [under the ADA and Rehabilitation Act]"). A plaintiff can establish intentional discrimination by showing that defendants acted with deliberate indifference. *Lacy v. Cook Cty., Illinois*, 897 F.3d 847, 863 (7th Cir. 2018). Deliberate indifference requires both (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood. *Id*. (citations omitted).

In this case, plaintiff brings her ADA and Rehabilitation Act claims under two theories: (1) deliberate indifference to peer-to-peer harassment; and (2) failure to accommodate.

A. **Peer-to-Peer Harassment**

Plaintiff asserts that the district is liable under the ADA and RA because it failed to protect her from Student X's assault on April 20, 2015. In *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999), the Supreme Court addressed school district liability for peer-to-peer sexual harassment in violation of Title IX of the Education Amendments of 1972, which provides that

> no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a).

The *Davis* Court held that a school district may be held liable under Title IX if it is "deliberately indifferent" to peer-to-peer sexual harassment and its response is "clearly unreasonable in light

7

of the known circumstances." *Davis*, 526 U.S. at 648. A school district cannot be found liable based on the actions of the harassing students; rather, liability is premised on the district's own inadequate *response* to the acts of the harassing students. *Id*. at 641–42. Only when the district knows of the harassment and is deliberately indifferent to that harassment "can the [district] be said to 'expose' its students to harassment or 'cause' them to undergo it 'under' the [district's] programs." *Id*. at 645.

The Court further explained that "funding recipients [under Title IX] are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Id*. at 650. An obvious example of such harassment, explained the Court, would be the "overt, physical deprivation of access to school resources," for example, if male students were to physically threaten female peers every day to the point where the females were prevented from using a particular resource, such as an athletic field or computer lab." *Id*. at 650-51. The Court made clear, however, that a plaintiff need not show physical exclusion to show that he or she was deprived of an educational opportunity as a result of another student's harassment: an "effective denial" of equal access to an institution's resources and opportunities could trigger a damage claim. *Id*.

Although neither the Supreme Court nor the Court of Appeals for the Seventh Circuit has addressed school district liability for peer-to-peer *disability*-based harassment under § 504 and the ADA, other circuit courts, as well as district courts in this circuit, have applied *Davis*'s framework to such claims. *S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cty.*, 819 F.3d 69, 75 (4th

8

Cir. 2016) ("Like most of the federal courts to consider the question, we think it clear that [*Davis's*] reasoning applies to § 504 claims arising from student-on-student harassment or bullying."); *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 995–96 (5th Cir. 2014) (citing cases from other circuits); *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 454 (6th Cir. 2008) (citing cases from district courts); *Bowe v. Eau Claire Area Sch. Dist.*, 2017 WL 1458822, at *2 (W.D. Wis. 2017); *Werth v. Bd. of Directors of Pub. Schs.*, 472 F. Supp. 2d 1113, 1126–27 (E.D. Wis. 2007).

As these courts note, extending *Davis's* test to § 504 claims arising from peer-on-peer harassment or bullying makes sense because the statutory language in Title IX used to support peer-to-peer sexual harassment claims parallels the language in the Rehabilitation Act and the ADA. *S.B.*, 819 F.3d at 75 (§ 504's operative language is "strikingly similar" to Title IX's); *Lance*, 743 F.3d at 996 (noting similarities in wording of § 504 and Title IX); *Werth*, 472 F. Supp. 2d at 1126; *see also Martin v. E. ST. Louis Sch. Dist. # 189*, 2016 WL 1718332, at *5 (S.D. Ill. 2016) (similarity in statutory language supported applying variant of *Davis* test to student-on-student disability harassment claims). This reasoning is persuasive, and neither party disputes that a modified version of the *Davis* test should apply to plaintiff's claim.

Accordingly, to prevail on her peer-to-peer harassment claim, plaintiff must show that:

(1) Plaintiff was an individual with a disability;

(2) She was harassed based on her disability;

(3) The harassment was sufficiently severe or pervasive that it altered the condition of her education;

(4) The school knew about the harassment; and

(5) The school was deliberately indifferent to the harassment.

9

*Lance*, 743 F.3d at 996; *Bowe*, 2017 WL 1458822, at *2; *Werth*, 472 F. Supp. 2d at 1127. *See also Biggs v. Bd. of Educ.*, 229 F. Supp. 2d 437, 444–45 (D. Md. 2002); *K.M. ex rel. D.G. v. Hyde Park Cent. Sch. Dist.*, 381 F. Supp. 2d 343, 359, 360–61 (S.D.N.Y. 2005).

Before analyzing these elements, it is important to note that plaintiff does not rest her peer-to-peer harassment claim on the district's *response* to Student X's actual assault of plaintiff on April 20, 2015. *See* Br. in Opp., dkt. 33, at 17-18. That is a logical decision: the district took plaintiff's allegation seriously, contacted the police, conducted its own investigation, and placed both students under constant supervision. No reasonable jury could find post-assault deliberate indifference on these facts.

Plaintiff's claim rests on instances of student misconduct leading up to the assault, and what she argues was the district's deliberate indifference to that misconduct. Plaintiff argues that, based on Vargas's two reports to Memorial staff that a boy at school told plaintiff he wanted to have sex with her, combined with plaintiff's vulnerability as a result of her cognitive deficits and her statements about wanting to have babies, the district should have put plaintiff under constant supervision upon receiving the reports from Vargas.

Plaintiff's first problem is that she lacks admissible evidence to show that the pre-assault harassment actually occurred, much less who perpetrated it. Plaintiff is incompetent to testify and she has not introduced testimony from any witness who admits making such remarks to plaintiff or who claims to have overheard such remarks. Plaintiff's evidence consists of her mother's testimony that plaintiff told her that "a boy" at school had said that he wanted to have sex with plaintiff. This is inadmissible to prove the truth of the matter asserted—namely that a boy at school told plaintiff he wanted to have sex with her. *Accord Gabrielle M. v. Park Forest-Chicago Heights School Dist. 163*, 315 F.3d 817 (7th Cir. 2003) (father's testimony that daughter

10

had told him that child at school touched her inappropriately "is hearsay and cannot be admitted to prove the truth of the matter asserted-that Jason touched Gabrielle.").

But plaintiff is entitled to have facts found and reasonable inferences drawn in her favor. So I will assume that Vargas's testimony could be admitted to establish that a boy at school had in fact made sexual remarks to plaintiff–or at least, that plaintiff's team at Memorial had been told that such remarks had been made. I will further assume that Student X was the boy who made the remarks. Even when the court accepts these facts, Vargas's reports are too vague to establish the elements of plaintiff's ADA and Rehabilitation Act deliberate indifference claim.[4]

Plaintiff brought this federal lawsuit under two very specific statutes that protect a specific class of people from a specific type of harm motivated by the specific intent of the perpetrator arising from the victim's class membership. In the context of a peer-harassment claim under the ADA or the Rehabilitation Act, the plaintiff must demonstrate that the harassment was discriminatory, which requires a showing that she was harassed based on her disability. To do this, plaintiff must prove "a 'link' between the harassment and [her] peers' knowledge of [her] disability or resentment of [her] accommodations." *Bowe*, 2017 WL 1458822, at * 2. Plaintiff need not show that the harasser understood the "precise nature" of her disability, so long as she can show that his conduct was "reasonably connected" to it. *K.R.S. v. Bedford County School Dist.*, 109 F. Supp. 3d 1060, 1075-77 (S.D. Iowa 2015).

Plaintiff has no evidence to establish this connection. All she offers to show that Student X's conduct was connected to her disability is Hartman's admission that if plaintiff had had

---

[4] Staff at Memorial did not need to know the identity of the boy who was making sexual remarks to plaintiff in order to decide whether to chaperone plaintiff more tightly, but that is a different question than the one presented by plaintiff's claims under the ADA and the RA.

constant supervision before the assault occurred, then the assault would not have happened. Br. in Opp., dkt. 33, at 14. This is a non-sequitur. That there was some course of action that the district could have taken that might have prevented the assault is not the test in an ADA or RA lawsuit: the question is whether Student X harassed plaintiff "because of" her disability.

The mere fact that plaintiff was vulnerable is not enough. The ADA and the Rehabilitation Act are not general protection statutes for vulnerable people with disabilities, they are anti-discrimination statutes. What plaintiff must show is that Student X–or whoever else it was who said that he wanted to have sex with plaintiff–*knew* this and targeted plaintiff for this reason. Plaintiff has presented no such evidence. Although one could *speculate* that Student X saw plaintiff as easy prey due to her cognitive immaturity, speculation won't stave off summary judgment. Without some admissible evidence to support an inference that Student X's harassment of plaintiff was connected to her disability, plaintiff cannot establish the second element of her claim. *Cf. Bowe*, 2017 WL 1458822, at *2 (plaintiff's allegation that district officials told some of his classmates and their parents about his autism sometime before February 2011, his classmates called him "stupid" in December 2010, accused him of having "mental deficiencies" in February 2011, and called him "stupid" again in February 2014, was sufficient to support inference that plaintiff was harassed on at least three occasions based on his disability); *Werth*, at 1128-29 (even though child had visible physical deformity, there was no proof that students who threw wood pieces at him in shop class had teased or harassed him at any other time based on his disability, and throwing incidents were not coupled with harassing words; therefore, plaintiff had not established the "because of" element of his claim;); *Hoffman v. Saginaw Pub. Sch.*, No. 12–10354, 2012 WL 2450805, *15 (E.D. Mich. June 27, 2012)

(allegation that on one occasion D.K. mocked M.M.'s posture and mimicked the shape of his visible bone disorder was not enough to suggest D.K. harassed M.M. because of M.M.'s disability); *K.R.S.*, 109 F. Supp. 3d at 1077 (even though plaintiff had cognitive disability that was not physically apparent and could not be precisely known by other students, evidence that school district was relatively small, plaintiff had to repeat 8th grade, and that plaintiff left his regular classes to receive special education instruction, combined with evidence that harassing students called plaintiff "dumb," "stupid," "idiot," "retard," or "moron," was enough from which a trier of fact could infer that plaintiff was harassed because of his cognitive learning disability).

Second, there is no evidence suggesting that the district had any knowledge that plaintiff was being pursued for sexual contact based on her disability. Even accepting that Vargas told Barrientos and Schultz that "a boy" at school told plaintiff he wanted to have sex with her, this allegation does not establish actual knowledge on the part of the district of *disability-based* harassment, as opposed to sexual harassment. Nothing Vargas said to Barrientos or Schultz would have alerted the district that Student X or anyone else was sexually harassing plaintiff because of her disability. *Accord Rost ex rel. K.C. v. Steamboat Springs RE-2 School Dist.*, 511 F.3d 1114, 1119-20 (11th Cir. 2008) (student's statement to school officials that boys were "bothering her" insufficient to notify school of sexual harassment); *Martin v. E. St. Louis Sch. Dist. #189*, No. 14-CV-1393-MJR-SCW, 2016 WL 1718332, at *5 (S.D. Ill. Apr. 29, 2016) (cognitively-disabled student who was raped at school could not defeat summary judgment on ADA and Rehabilitation Act claims absent evidence that the school "had any knowledge that

13

C.D.C. was being harassed based on her disability or that there was a substantial risk that she would be harassed based on her disability").[5]

Third, the two alleged comments reported to plaintiff's team prior to April 20, 2015, do not rise to the requisite level of severity to be actionable. To establish her claims, plaintiff must show that the harassment was sufficiently severe or pervasive that it altered the condition of her education and created an abusive educational environment. As the Supreme Court explained in *Davis,* the harassment must have the systemic effect of denying the victim equal access to an educational program or activity; a single instance of severe peer-on-peer harassment is not enough:

> Although, in theory, a single instance of sufficiently severe one-on-one peer harassment could be said to have such an effect, we think it unlikely that Congress would have thought such behavior sufficient to rise to this level in light of the inevitability of student misconduct and the amount of litigations that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment. By limiting private damages actions to cases having a systemic effect on educational programs or activities, we reconcile the general principle that Title IX prohibits official indifference to known peer sexual harassment with the practical realities of responding to student behavior.

526 U.S. at 652–53.

---

[5] Plaintiff points to a handful of other incidents having nothing to do with Student X as supporting an inference that the district was on notice that plaintiff was suffering disability-based harassment by one of her peers. Specifically, plaintiff points to: (1) an email in which Schultz noted that plaintiff was potentially being used by another student to pass notes between classes; (2) an April 10, 2015 email from Barrientos in which she relates that plaintiff's mother said that plaintiff had been complaining that she did not want to go to school "because she is being bothered by other students at times;" and (3) plaintiff's comments about wanting to have a baby.
Putting aside the district's objections to the admissibility of some of this evidence, none of it is material. Nothing in the emails or plaintiff's statements supports an inference that any of plaintiff's peers were harassing her based on her disability, much less that the school had actual knowledge of such harassment.

Here, even if plaintiff could show that Student X or another boy verbally harassed her about sex prior to the assault, plaintiff has adduced no evidence—nor argument, for that matter—to show that these comments had any "concrete, negative effect" on her education or participation in any school activity, much less that she was "effectively denied" equal access to the school's resources. *Davis*, 526 U.S. at 651, 654.[6] Given plaintiff's failure to produce any evidence to show that the pre-assault peer harassment had *any* negative impact on her educational experience, plaintiff cannot establish this element of her claim. *Accord Davis*, 526 U.S. at 652 ("The dropoff in LaShonda's grades provides necessary evidence of a potential link between her education and G.F.'s misconduct"); *Werth*, 472 F. Supp. 2d at 1128-29 ("In addition, there is no indication that Robert S. did anything that prevented Werth from working on his wood project or otherwise complete Kruzel's class. Thus, Werth has not established that he was denied the benefits of a federally funded program or activity due to his disability as required to prove the second element of his claim.")

Finally, because plaintiff has failed to establish that defendants knew that she was being subjected to disability-based harassment so severe that it altered the condition of her education, it follows that defendants could not have been deliberately indifferent to that harassment when they failed to put plaintiff under constant adult supervision in response to the reports by Vargas. *Bowe v. Eau Claire Area School District*, ("*Bowe II*"), 2018 WL 791416, at * 3 (W.D. Wis. 2018) ("For a jury to find that the district was deliberately indifferent, there must be evidence that the

---

[6] Plaintiff argues that the sexual assault was severe enough to interfere with her education. Although the district argues to the contrary, it is unnecessary to decide whether the assault itself was sufficiently pervasive and severe to be actionable. Plaintiff does not seek damages based on the district's response to the assault, but rather its failure to prevent the assault from occurring. The proper focus of the severity analysis must be on the alleged harassment that had been reported by Vargas before the assault, not on the actual assault and its aftermath.

15

district's response to the *known disability-based harassment* was "clearly unreasonable in light of the known circumstances.") (quoting *Davis*, 526 U.S. at 648) (emphasis added).

For all of these reasons, I am granting the district's motion for summary judgment on plaintiff's peer-to-peer harassment claim.

### B. Failure to Accommodate

As an alternative to her claim of peer-to-peer harassment, plaintiff seeks to hold the district liable for what she contends was its failure to make reasonable accommodations under the ADA and Rehabilitation Act. *See Washington v. Ind. High School Athletic Ass'n, Inc.*, 181 F. 3d 840, 847 (7th Cir. 1999) (plaintiff making a claim under § 504 of the Rehabilitation Act or Title II of the ADA need not prove intent to discriminate on the basis of disability, but can also establish liability by showing that defendant refused to provide a reasonable modification or accommodation for the individual's disability). By refusing to make reasonable accommodations, a public entity effectively denies the plaintiff access to a program or activity because of her disability. *Alexander v. Choate*, 469 U.S. 287, 299-301 (1985) (Rehabilitation Act's guarantee of meaningful access to programs may require defendants to make reasonable accommodations of an individual's disability in order to ensure such access to the benefit offered by the program) (citing *Southeastern Cmty. Coll. v. Davis*, 442 U.S. 397 (1979)); *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012) ("Refusing to make reasonable accommodations is tantamount to denying access"). A public entity must modify its programs "if such a modification is *necessary* to ensure that the disabled have equal access to the benefits of that program." *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 748 (7th Cir.

2006) (emphasis added). This means that the plaintiff must show that, but for her disability, she would not have been excluded or denied equal access to the benefits of the program. *Washington*, 181 F.3d at 849.

Reprising her peer-to-peer harassment theory, plaintiff argues that the district failed to reasonably accommodate her disability by failing to place her under constant supervision until after she was sexually assaulted. Although there is no evidence that plaintiff or her mother asked for such an accommodation, plaintiff argues the need was obvious because of her diminished mental capacity, "superimposed with the ominous events leading up to the assault." Pl.'s Br., dkt. 33, at 13. *Accord Robertson v. Las Animas Cnty. Sheriff's Dept.*, 500 F.3d 1185, 1196–98 (10th Cir. 2017) (need for accommodation either can derive from individual's request for an accommodation or can be imputed onto public entity where the individual's need for accommodation is "obvious").

To be sure, Memorial staff saw plaintiff as vulnerable given her mental deficits and her obsession with boys. This being so, plaintiff has not provided any evidence that her particular disabilities *alone* made her exceptionally vulnerable to sexual assault or demanded that she be provided with adult supervision at all times in order to attend school safely. *Cf. Doe ex rel. Smith v. Sobeck*, 941 F. Supp. 2d 1018, 1023–24 (S.D. Ill. 2013) (denying motion to dismiss developmentally disabled adult's claim that operator of developmental training program failed to accommodate her disability where plaintiff alleged that "Doe's particular vulnerabilities caused by her disability" prevented her from being able to safely access the program, and additional safety measures were necessary to provide her meaningful access). Indeed, the record suggests

that plaintiff was able to attend Memorial safely for more than a year without such an accommodation.

Instead, plaintiff argues that the district should have implemented constant monitoring after it was informed by Vargas that a boy at school told plaintiff that he wanted to have sex with her. However, modifications are required only for those "who would have trouble accessing the program benefits *because of their disability*, not for some other reason." *Doe*, 941 F. Supp. at 1023 (citing *Wisconsin Cmty. Servs.*, 465 F.3d at 748) (emphasis added). Here, the reason plaintiff could not attend school safely is because she was being pursued by a boy who may have been Student X. As explained in the preceding section, however, there is no evidence in the record to suggest that Student X was pursuing plaintiff because of her disability or that the district knew this to be the case. Thus, the modification that plaintiff argues should have been provided was not necessary because of her disability.[7] As a result, plaintiff cannot prevail on her failure-to-accommodate claim.

### C. Conclusion

What happened to plaintiff is tragic. Perhaps it was preventable: as plaintiff notes throughout her brief, the assault would not have occurred had the district placed her under constant adult supervision prior to the assault. In hindsight, it's easy to fault the district for not having done so. But as noted above, this 7civil lawsuit is premised on two narrowly-focused

---

[7] Even if admissible, vice principal Hartman's deposition testimony—that the district had an obligation to "accommodate [plaintiff] with supervision" after Vargas told Schultz and Barrientos that a boy was stating he wanted to have sex with plaintiff, *see* dkt. 38, PPFOF No. 45—fails to supply this missing evidentiary link.. Common sense suggests that the district is obliged to protect all of its students from peer predation, with a heightened duty in the face of specific warnings. The court does not interpret Hartman's statement as an admission of an ADA violation by the district.

18

federal statutes that do not correspond tightly with plaintiff's claims. Neither the ADA nor the Rehabilitation Act imposes a duty on school districts to serve as general protectors of their students; these acts require only that schools not discriminate against disabled students. There is insufficient evidence that the district violated this obligation here. Even when the facts are construed in plaintiff's favor, they fail to support an inference that the district either tolerated disability-based harassment of plaintiff by her peers or failed to reasonably accommodate her disability. Accordingly, plaintiff's claims must be dismissed.

ORDER

IT IS ORDERED that defendants' motion for summary judgment is GRANTED. The clerk of court is directed to enter judgment for defendants and dismiss this case.

Entered this 20th day of May, 2019.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
District Judge